Kirkpatrick, O. J.
From the case stated and presented to the court for their opinion, it appears, that Peter Popino, on the 4th. day of February, 1752, being, in possession of a certain plantation containing two hundred.and thirty-two and a half acres, and seven acres of marsh, situate in Mannington, in the county of Salem, made his last will and testament, and therein and thereby, among other things, devised as follows, that is to say:
“ Item. My will is, that if my said sons, James and Peter, shall arrive to their respective ages of twenty-four years, he, my said son James, shall divide the plantation whereon I now dwell, and the seven acres of marsh that I purchased of Thomas Haynes, into two equal parts, as near as he can, in quantity and quality, and he, my said son *51 Peter, shall elect or choose one-half, which I give and devise to him ami to the heirs of his body, gotten or to be begotten forever, and the other half part thereof 1 give and devise to my said son James, and the heirs of his body, .gotten or to be begotten forever, they, my said sons, paying out of the same, each of them, the sum of twenty pounds, proclamation money, to my daughter Abigail, when she .arrives at the ago of twenty-one years. Item,. If either of my sons die without issue, I give the said plantation and ■marsh to the survivor of them and the heirs of his body, gotten or to be begotten forever, ho paying to his said sister the sum of forty pounds of like money, at her said age of twenty-one years. But if it shall happen that both or either of my said sons die before they arrive at the age of twenty-four years, as aforesaid, leaving issue, then the said plantation and marsh to be equally divided, as aforesaid, by certain friends, to be appointed for that purpose bj~ those that may be concerned therein. Item. My will further is, that my said wife shall have the whole profits of my real estate, until 1113- said sous arrive to their respective age or ages of twenty-four years, as aforesaid, if she so long remain my widow, and afterwards half the profits thereof, so long as she shall remain my widow, and no longer.”
It further appears, that, after the death of the said testator, his widow, Mary Popino, continued in possession of the said plantation and marsh for several years, and, after her, her son, James *Popino, came into the possession; that on the 29th of September, 1764, the said James Popino and Mary, his wife, and Peter Popino, the other son and devisee in the said will named, and Mary Popino, the widow of the testator, for the consideration of £530, by their certain deed, indented, sold and conveyed the said plantation and marsh to one Joshua Huddy, who entered into and became possessed thereof, and under whom the defendant, by sundry mesne conveyances, now holds the premises in question, which are a part thereof; that James Popino, the *52 devisee aforesaid, some t-ime about the year 1791, having long before that time attained the age of twenty-four years, departed this life, leaving four sons, that is to say : Wade,Samuel, George and William, and one daughter, that is to-say: Mary, who married Thomas Truss; that Wade, the eldest son of James, died two or three years after his father, under age and without issue; that Samuel, also, is dead,, leaving one son, named John, who is one of the lessors of the plaintiff, and that George and William, the other two sons, and Thomas Truss and Mary, his wife, are the other lessors of the plaintiff.
Upon this devise, and this state of facts, the lessors of the plaintiff claim as heirs, under the statute, of Wade Popino,. their brother, upon the principle, that he took as heir in tail of his father, James Popino; and that in him the fee became absolute, by the force of the statutes of the 26th of August, 1784, and the 23d of March, 1786, limiting estates tail. And the single question is, whether any, and if any what estate passed by this devise to- James Popino, thedevisee therein named, under whom the plaintiff claims.
The first and great rule in the construction of wills is, that the intention of the testator is to prevail, if consistent with the rules of law; and the next, that' that intention i& to be collected from the whole will, taken together, without much regard to the order in which the particular clauses-upon the same subject may be arranged. And upon these rules, I think, we shall have but little difficulty in giving a rational and satisfactory construction to this devise.
In the latter part of the first item of the devise, the testator gives one-half. of the said plantation and marsh to his son Peter and to the heirs of his body, gotten or to b& begotten for ever, and the other half to his son James and the heirs of his body, * gotten or to be begotten for ever, they paying out of the same, each of them, £20 to his daughter, Abigail, when she arrives at the age of twenty-one years. This is the substantial part of the devise; th& *53 former part of it, as to tlieir arriving at the age of twenty-four years before a division should take place, and the manner in which that division was to be.made, is, in its very nature, directory only, and not of the essence of the devise at ail; and the conditional conjunction if, with which it is introduced, is to be limited in its operation to that part only. To call the mode of division, or the time of making it, which are bur mere circumstances, conditions precedent upon which the estate was to vest, and without which it must be totally defeated, would be contrary to the plain reason of the thing.
That the testator did not intend that the vesting of the estate should depend upon these circumstances, I think may be fairly collected, too, from the latter part of the devise itself, which says: “ but if it shall happen that both or either of my said sous dio before they shall arrive at the age of twenty-four years, as aforesaid, leaving issue, then the said plantation and marsh to bo equally divided, as aforesaid, by certain friends, to be appointed for that purpose by those that may be concerned therein.”
Now if this means any thing, it means that the issue, that is, the heirs of the body or bodies of either or both these sons, dying within the age of twenty-four, shall inherit from their fathers respectively; incontestably proving, I think, that the testator intended to pass an immediate estate in fee tail to the sons, even though they had not attained the age of twenty-four years, for without that the issue could not inherit, and there could, of course, be no division, for the whole must have descended to the heir at law, aud this whole clause of tho will must have been without meaning. As I have stated before, therefore, what is said in the first item of this devise, about the sons arriving at the age of twenty-four years, and the one dividing and the other choosing, are but cautionary' provisions that the same should be divided with discretion and without expense, provisions directory only, and not at all of the essence of the *54 devise. Nor does the devise of the profits to the wife, until the sons should attain to the age of twenty-four years, and half the profits afterwards, at all impugn, but rather strengthens and confirms this construction; for the words in this devise do not cany any estate in the lands to * the wife, but merely gives her the profits until the sons should arrive at that age when he thought they would be capable of managing'that interest for themselves.
And as to the charge of £40 in gross, to be paid to the testator’s daughter Abigail, when she should arrive at the age of twenty-one years, it makes no difference in the estate devised. The doctrine on this head is laid down very explicitly by Lord Mansfield in the case of Doe v. Fyldes, Bur. 833. and by Lord Kenyon in the case of Den v. Slater, 5 Durf. 333. This last case, it is true, is no authority here, but inasmuch as it is in perfect accordance with what had been settled before as the law, and especially as it seems to be a case exactly similar to ours, I have taken notice of it, and will cite his lordship’s words: he .says r “ where an estate is given generally, without adding words which would make it a fee, or an estate tail, and it is charged with the payment of an annuity (or gross sum) the devise takes a fee ; but that is not the case where an estate tail is expressly given.” The truth is, the charge of a gross sum is a circumstance affording a rule of construction where words are wanting, but never can enlarge an estate expressly given.
But if this charge cannot enlarge the estate «expressly devised, how much less can it be considered as a condition precedent, without the previous payment of which the estate-cannot vest, but must be defeated. The money is to be paid out of the land, and at a distant day. Now to say, that the devisees should pay out of the land, before they had any interest in it, or could enter upon it, or take possession of it; and still more, that they should pay at a distant day, leaving the estate in the meantime to descend to the heir at law. *55 •would be a contradiction iu terms, as well as contrary to all reasonable construction, it would be defeating the whole intent of the testator in this respect. And as to its being a condition subsequent, which has not been performed, that does not appear, nor does it lie in the defendant’s mouth to aver it. Flo is not the party interested in it.
Upon the whole, therefore, I am of opinion-that James and Peter, the devisees in the said will named, took a vested estate tail general, as tenants in common, in the said plantation and seven acres of marsh, with cross remainders in tail also, and a reversion in fee to the right heirs of the testator. And so that judgment must be for the plaintiff.